E-FILED
Tuesday, 07 December, 2004  04:18:17 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DIVISION OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| INTERNATIONAL HOUSE OF PANCAKES, INC. and IHOP PROPERTIES, INC. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MOHAMMED SHARAF, | ) Case No. 04-1345 ) |
| Defendant, | ) ) |
| and | ) ) |
| ALEX SBEITY, | ) ) |
| Proposed Intervenor. | ) |

## RULE 24 MOTION TO INTERVENE

NOW COMES ALEX SBEITY (a/k/a Ali Sbeity, a/k/a/ Ali Sebeity) ("Sbeity"), by his attorneys, Heyl, Royster, Voelker & Allen, and hereby moves to intervene by right, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure ("Rule 24"), or, in the alternative, to intervene by permission, pursuant to Rule 24(b), in the above-captioned case as a third party-plaintiff, and as grounds therefore asserts as follows:

Background Facts

1. On April 23, 2002 IHOP and Sharaf entered into a Franchise Agreement ("5412 franchise agreement"). A copy of which is attached hereto as "Exhibit A."

2. Plaintiff International House of Pancakes, Inc. and IHOP Properties, Inc. (collectively "IHOP") is a franchisor.

3. Defendant Mohammad Sharaf ("Sharaf") is a franchisee.

HEYL ROYSTER
VOELKER
& ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

4. During the time the events described in this section, Sharaf led Sbeity to believe that Sharaf was also a "subfranchisor."

5. During the time the events described in this section, Sharaf led Sbeity led to believe that Sbeity was a "subfranchisee."

6. Sbeity entered into a contract with Sharaf on June 9, 2003 to purchase the IHOP located at 5012 North Big Hollow Road, Peoria, Illinois 61615, which is referenced as IHOP No. 5412 ("5412") in the Complaint. A copy of this "Contract for Sale of Business" ("Contract") is attached hereto as "Exhibit B.

7. Sbeity paid Sharaf $158,000.00 on June 12, 2003 toward the purchase of 5412, pursuant to the contract. A copy of said checks is attached hereto as "Exhibit C."

8. The total purchase price Sbeity agreed to pay Sharaf for 5412 was: Three Hundred and Eighty Thousand Dollars ($380,000.00) and Sbeity agreed to begin paying the balance of a Four Hundred Forty-Five Thousand Dollars ($445,000.00) note to Comerica Bank ("Comerica Note").

9. On or about June 9, 2003 Sbeity agreed to begin paying on the Comerica Note, and Sbeity made the his first payment in July 2003, though the Comerica Note remained in Sharaf's name.

10. By December 2004, Sbeity had paid Sharaf approximately $371,000.00 toward the purchase of 5412. Sbeity has also paid on the Comerica Note.

11. Sbeity began to fully manage and operate 5412 on June 09, 2003.

12. Sbeity began paying IHOP's Weekly Remittance Reports on June 09, 2003. IHOP accepted and cashed said payments with Sbeity signing as "Franchisee" of 5412.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

-2-

13. Sbeity began paying for insurance on 5412 provided by Illinois Casualty Co., 1800 Fifth Avenue, P.O. Box 5018, Rock Island, Illinois 61204-5018, as of June 09, 2003.

14. IHOP, by and through its agent Cathy Celano, received written notice of Sbeity's intention to buy, own and operate 5412. A copy of one example of written notice, in the form of an email to IHOP's agent Cathy Celano, is attached hereto as "Exhibit D."

15. On or around January 30, 2004 Sbeity filed a Franchisee application with IHOP.

16. Sbeity attended and successfully completed IHOP's Management Craft Training Program in California on August 2, 2004 through August 28, 2004. With the exception of Sbeity's airline ticket to California, IHOP paid for all expenses associated with this training.

17. As of the date of this filing, IHOP has never officially rejected Sbeity's franchisee application. IHOP is and was aware that Sbeity has been operating 5412.

18. As late as June 15, 2004, IHOP, by and through its agent Nicole Durham-Mallory, communicated to Sbeity that IHOP was still processing his franchisee application and requested additional information.

19. On or about July 1, 2004 IHOP sent a letter addressed to Sharaf to 5412 notifying Sharaf of default and the possibility of termination of the 5412 franchise operation. This letter claimed 5412 had received an unsatisfactory or substandard review of 5412's operations and based the default letter thereon. The letter gave Sharaf seven (7) days to fully comply. A copy of the July 1, 2004 letter is attached hereto as "Exhibit E."

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

-3-

20. IHOP has a review process for its franchises with a "report card" grading system. IHOP's regular report card grading system addresses five (5) categories: (1) Greeting, (2) Service, (3) Departure, (4) Meal Quality, and (5) Cleanliness.

21. At the time IHOP sent Sharaf the Notice of Default Letter, 5412's most recent report card under IHOP's normal review process gave 5412 a rating of 89.52 (B grade) and placed 5412 in the upper third of IHOP franchises. 5412 received the top grade of one hundred percent (100.00%) in the cleanliness and meal quality categories.

22. On or about June 16, 2004, IHOP purportedly conducted a special operational review of 5412 that allegedly resulted in a score of sixty-three percent (63.00%).

23. Sometime between July 1, 2004 and July 11, 2004, IHOP again reviewed 5412 using a special operational review by an outside company named "National Sanitation Foundation ("NSF"). After the NSF reviewer concluded her inspection of 5412, the NSF reviewer told Sbeity that 5412 had earned a score of eighty-eight percent (88.00%) or eighty-nine percent (89.00%).

24. IHOP later informed Sbeity that 5412 had received a score of seventy-five percent (75.00%) for the NSF special operational review that took place sometime between July 1, 2004 and July 11, 2004. Sbeity requested a copy of that special review on at least four separate occasions, but IHOP refused to supply him with one.

25. On July 11, 2004 IHOP again graded 5412 using the normal review process. The report card issued by IHOP on this date gave 5412 one hundred percent (100.00%) on all areas. A copy of the July 11, 2004 Report Card is attached hereto as "Exhibit F."

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

-4-

26. IHOP assessed 5412 using its normal review process on several prior occasions. On April 6, 2004 5412 received an overall score of 100.00%. On May 15, 2004 5412 received an overall score of 79.05%. On June 4, 2004 5412 received an overall score of 89.52%. In the categories of cleanliness and meal quality, 5412 received the top score of one hundred percent (100.00%) on all of these report cards.

27. At the date of this filing, Sbeity was fully managing and operating 5412.

### Intervention of Right under Fed. R. Civ. Proc. 24(a)(2)

28. Rule 24(a) states in pertinent part: "Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. Pro. 24(a)(2).

29. Sbeity has an interest in the property and transactions subject to this action.

30. Sbeity's ability to either fully acquire 5412 or, in the alternative, his ability to seek the return of the money he has paid Sharaf for 5412, will be severely impaired or impeded, unless he is permitted to intervene in this action.

31. Neither IHOP nor Sharaf can adequately represent Sbeity's interests in this matter.

32. The district courts have considerable discretion in ruling on a motion under Rule 24(b). *SEC v. Homa*, 17 Fed. Appx. 441, 447 (7th Cir. 2001).

33. A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears *to a certainty* that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint. *Reich v. ABC/York-Estes Corp.*, 64

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

-5-

F.3d 316, 321 (7th Cir. 1995) (*citing Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983)) (Emphasis added).

34. A district court must accept as true the non-conclusory allegations of the applicant's motion to intervene under Rule 24. *Builders Ass'n of Greater Chicago v. County of Cook*, 1996 U.S. Dist. LEXIS 13142 (N.D. Ill. 1996) (*citing Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983)).

Permissive Intervention under Fed. R. Civ. Proc. 24(b)(2)

35. In the alternative, if this Court does not find that Sbeity has a right to intervene under 24(a)(2), Sbeity prays this Court grant him permission to intervene under Rule 24(b)(2).

36. Rule 24(b)(2) states in pertinent part: "Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. Pro. 24(b)(2).

37. Permissive intervention under Rule 24(b) is wholly discretionary. *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000).

38. Sbeity's claims again IHOP and those against Sharaf involve the similar questions of law and fact as those claims alleged in the Complaint.

39. Sbeity's intervention in this claim will not cause undue delay of this action.

40. Sbeity's intervention in this claim will not unfairly prejudice the adjudication of the rights of the original parties.



Timeliness of Intervention

41. Rule 24 should be liberally construed in favor of potential intervenors. *IWork Software v. Corporate Express, Inc.*, 2003 U.S. Dist. LEXIS 19686 (N.D. Ill. 2003).

42. A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation. In determining whether a motion to intervene is timely, courts consider the following factors:

   (a) the length of time the intervenor knew or should have known of his interest in the case;

   (b) the prejudice caused to the original parties by the delay;

   (c) the prejudice to the intervenor if the motion is denied; and

   (d) any other unusual circumstances.

43. The purpose of the timeliness requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal. As soon as a prospective intervenor knows or has reason to know that his interests might be adversely affected by the outcome of the litigation he must move promptly to intervene. *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000).

44. The test for timeliness is essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly. *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (*citing Nissei Sangyo*, 31 F.3d 435, 438 (7th Cir. 1994).

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

-7-

45. The critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977) (permitting post-judgment intervention). *See Acree v. Republic of Iraq*, 361 U.S. App. D.C. 410 (D.C. Cir. 2004) (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395, 97 S. Ct. 2464 (1977) (holding that the trial court erred in denying as untimely a post-judgment motion to intervene filed promptly after judgment).

46. Settlement of litigation by the original parties is not conclusive if a third party possessing an interest in the property or transaction which is the subject of the action has been excluded from the negotiations. Intervention permits such an entity to prevent the original litigants from bargaining away its interests. If they beat the intervenor to the punch, the court may annul the settlement in order to give all interested persons adequate opportunity to participate in the negotiations and proceedings. *Atlantic Mut. Ins. Co. v. Northwest Airlines*, 24 F.3d 958, 960-61 (7th Cir. 1994).

47. A particular absolute measure of timeliness, whether the request for intervention came before or after the entry of judgment, is of limited significance: The rationale which seems to underlie this general principle is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties or (2) substantially interfere with the orderly processes of the court. In the present case neither of these results will ensue if the intervention is allowed. In sum, if neither of these results would occur the mere fact that judgment already has been entered should not by itself require an application for intervention to be denied.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

*Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir.-OLD 1977) (citations omitted).

48. IHOP filed its Complaint in this matter on October 6, 2004.

49. Sharaf filed his Answer on October 25, 2004.

50. IHOP and Sharaf entered a Stipulation to Judgment December 4, 2004 ("Stipulation").

51. While some courts have held that a post-judgment intervention is only timely in unusual or compelling circumstances (*see Thurman v. Federal Deposit Ins. Corp.*, 889 F.2d 1441, 1446 (5th Cir. 1989), such unusual or compelling circumstances are present here.

52. Sbeity's interests in 5412 are discussed in the Stipulation, but inadequate measures are set forth to protect Sbeity's interests.

53. The Stipulation does not discuss any process or procedures IHOP will follow in assessing Sbeity as a potential franchisee.

54. The Stipulation is silent as to whether IHOP's relationship with 5412 will return to normal regarding funding of advertising, providing promotional specials, establishing open communications, providing support by regional management and/or operational consultants to ensure 5412 satisfies IHOP's articulated expectations.

55. Moreover, under the Stipulation, Sbeity is dependent upon Sharaf to move forward with their agreement in order to protect Sbeity's rights. Sbeity's only recourse for protection of his rights is to petition this Court.

56. Since the subject case concerns the very issues raised by Sbeity, there is no better forum to address Sbeity's claims.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

-9-

57. Neither Plaintiff nor Defendant will be unfairly prejudiced if Sbeity is now permitted to intervene.

58. Sbeity's rights and interests in 5412 will be completely unprotected if he is not permitted to intervene.

59. Sbeity has filed this Motion to Intervene promptly after learning of IHOP's Complaint and obtaining an attorney, and the attorney had appropriate time to investigate this matter.

### Compliance with Fed. R. Civ. Pro. 24(c)

60. Rule 24(c) reads in pertinent part: "A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought . . .." Fed. R. Civ. Pro. 24(c). In compliance with Rule 24(c) such a pleading is attached hereto.

WHEREFORE, ALEX SBEITY prays for leave to intervene in the above captioned case and for such other and further relief as the Court deems proper.

          ALEX SBEITY,
          Intervenor

BY:     s/Timothy L. Bertschy
      HEYL, ROYSTER, VOELKER & ALLEN
      Timothy L. Bertschy (lead counsel)
      #199931
      Maureen R. De Armond
      #6282719

HEYL ROYSTER
VOELKER
& ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the parties to the above cause by enclosing the same in an envelope addressed to such parties at their business address as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in the United States Mail in Peoria, Illinois, on the 7th day of December, 2004.

| | |
|---|---|
| Mr. Matthew B. Smith | Mohammed Sharaf |
| Quinn, Johnston, Henderson & Pretorius | P.O. Box 10040 |
| 227 NE Jefferson Street | Peoria, IL 61612 |
| Peoria, IL 61602-1211 | |

                                                                              s/Timothy L. Bertschy
                                                                                Timothy L. Bertschy
                                                                                 Maureen R. De Armond

HEYL ROYSTER VOELKER & ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400